# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of:<br>Information associated with account subscriber<br>number identified as 871265 that is within the<br>possession, custody, or control of Rackspace US, Inc. | )<br>)<br>)<br>)<br>)<br>) | Case No.   2:20-MJ-3177 |

## WARRANT BY TELEPHONE PURSUANT TO 18 U.S.C. § 2703

To:      Any Authorized Law Enforcement Officer

An application by a federal law enforcement officer requests the production and search of the following data:

*See Attachment A*

The data to be produced and searched, described above, are believed to contain the following:

*See Attachment B*

I find that the affidavit, or any recorded testimony, establishes probable cause to produce and search the data described in Attachment A, and to seize the data described in Attachment B.  Such affidavit is incorporated herein by reference.

**AUTHORIZED LAW ENFORCEMENT OFFICER/S IS/ARE HEREBY COMMANDED** to serve this warrant on Rackspace US, Inc., at any time within 14 days from the date of its issuance.

**RACKSPACE US, INC., IS HEREBY COMMANDED** to produce the information described in Attachment A within 10 calendar days of the date of service of this order.  **RACKSPACE US, INC., IS FURTHER COMMANDED** to comply with the further orders set forth in Attachment B.

The officer executing this warrant, or an officer present during the execution, shall prepare an inventory as required by law, and shall promptly return this warrant and the inventory to the United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.

**AUTHORIZED LAW ENFORCEMENT OFFICER/S IS/ARE FURTHER COMMANDED** to perform the search of the data provided by Rackspace US, Inc., pursuant to the procedures set forth in Attachment B.

Date and time issued:  _7/10/2020; 11:16AM_

_John E. McDermott_
*Judge's signature*

City and State:  _Los Angeles, CA_

Hon. John E. McDermott, U.S. Magistrate Judge
*Printed name and title*

AUSA:  J. Johns (213-503-1690) and M. Williams (ext. 3359)

| *Return* | |
|---|---|
| *Case No*:<br><br>2:20-MJ-3177 | *Date and time warrant served on provider:*<br><br>07/10/2020,  1857 hours |
| *Inventory made in the presence of:*<br>    n/a | |
| *Inventory of data seized:*<br>[Please provide a description of the information produced.]<br>1 cover letter<br>1 Western Digital USB hard drive<br>------------------------------------------------------------No Further ------------------------------------------------------------ | |

| *Certification* |
|---|
| *I declare under penalty of perjury that I am an officer involved in the execution of this warrant, and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*<br><br>Date: 07/24/2020 _____     _____<br>                                                                  *Executing officer's signature*<br>                                                   Wendy Su, EPA-CID Special Agent<br>                                                                  *Printed name and title* |

## **ATTACHMENT A**

### **PROPERTY TO BE SEARCHED**

This warrant applies to information associated with the SUBJECT ACCOUNT identified by the subscriber number 871265 that is within the possession, custody, or control of Rackspace US, Inc., a company that accepts service of legal process at 1 Fanatical Place, City of Windcrest, San Antonio, Texas 78218, regardless of where such information is stored, held, or maintained.

## ATTACHMENT B

### ITEMS TO BE SEIZED

**I.   SEARCH PROCEDURES**

1.   The warrant will be presented to personnel of Rackspace US, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2.   To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3.   The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the law enforcement personnel specified below in Section IV.

4.   With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a. below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.  The search shall extract and seize only the specific items to be seized under this warrant (see Section III below).  The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.  The review of the electronic data may

i

be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5.   If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.   The search team will complete its search of the content records as soon as is practicable but not to exceed 120 days from the date of receipt from the PROVIDER of the response to this warrant.  The government will not search the content records beyond this 120-day period without first obtaining an extension of time order from the Court.

7.   Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.  Thereafter, the search team will not access the data

from the sealed original production which fell outside the scope of the items to be seized absent further order of the Court.

     8.   The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

     9.   Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II.   INFORMATION TO BE DISCLOSED BY THE PROVIDER

     10.  To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, regardless of whether such information is located within or outside of the United States, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

     a.   All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, limited to that which occurred on or after January 1, 2020,[13] including:

     i.   All files and settings associated with the SUBJECT ACCOUNT, including preserved and current images,

---

[13] To the extent it is not reasonably feasible for the PROVIDER to restrict any categories of records based on this date restriction (for example, because a date filter is not available for such data), the PROVIDER shall disclose those records in its possession at the time the warrant is served upon it.

communication and connection logs, and information used to login or gain access to the servers, and including capture of data stored in volatile memory;

ii.  All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken; and

iii. All stored passwords, including passwords stored in clear text and hash form, and for any hashed values that include a salt, the PROVIDER shall provide the salt value used to compute the stored password hash value, and any security questions and answers.

b.  All other records and information, including:

i.  All subscriber information, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), any alternate names, other account names or e-mail addresses associated with the account, linked accounts, telephone numbers, physical addresses, and other identifying information regarding the subscriber, including any removed or changed names, email addresses, telephone numbers or physical addresses, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records, **and including any changes made to any subscriber information** or services, including specifically changes made to secondary e-mail accounts, phone

numbers, passwords, identity or address information, or types of services used, and including the dates on which such changes occurred, for the following accounts:

(I)  the SUBJECT ACCOUNT.

ii.  All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a., including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations, and including specifically the specific product name or service to which the connection was made.

## III. <u>INFORMATION TO BE SEIZED BY THE GOVERNMENT</u>

11.  For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a.  All information described above in Section II.10.a. that constitutes evidence, contraband, fruits, or instrumentalities of violations of <u>7 U.S.C §§ 136j(a)(1)(A)</u> and <u>(E)</u>, <u>136l(b)(1)</u>, namely:

i.  Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

ii.  Documents and records referring or relating to the purchase, manufacture, compounding and/or processing of MAQUAT 10, QUAT, sanitizer, QUAT Solution, or other unregistered or misbranded pesticide products by or on behalf of OCCS or Ultra Clean.

iii. Documents and records referring or relating to the purchase of chemicals and/or other ingredients such as alkyl dimethyl benzyl ammonium chloride, alkyl dimethyl ethylbenzyl ammonium chloride, or any other unregistered or misbranded pesticide products.

iv. Documents and records referring or relating to efficacy claims for MAQUAT 10, QUAT, sanitizer, or QUAT Solution, such as microbiological analysis or other laboratory testing results and reports.

v. Documents and records referring or relating to the labeling, packaging, or repackaging of MAQUAT 10, QUAT, sanitizer, or QUAT Solution, or other unregistered or misbranded pesticide products manufactured by or on behalf of OCCS or Ultra Clean.

vi. Documents and records referring or relating to marketing, advertising, sales or product representations for MAQUAT 10, QUAT, sanitizer, or QUAT Solution, or other unregistered or misbranded pesticide products manufactured by or on behalf of OCCS or Ultra Clean.

vii. Documents and records referring or relating to the distribution, sale, transportation, and delivery of MAQUAT 10, QUAT, sanitizer, or QUAT Solution, or other unregistered or misbranded pesticide products manufactured by or on behalf of OCCS or Ultra Clean.

viii. Documents related to State of California and/or federal rules and regulations applicable to the manufacture, sale, distribution, and shipment of pesticides.

        ix.   Documents and records that show which entity of individuals own, control, or manage OCCS, such as rental or lease agreements, mortgage documents, rental or lease payments, and utility or telephone bills.

        b.   All records and information described above in Section II.10.b.

**IV.   <u>PROVIDER PROCEDURES</u>**

12.   IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant.  The PROVIDER shall send such information to:

> Special Agent Wendy Su
> 75 Hawthorne Street, CID-1
> San Francisco, CA 94105
> Phone: (415) 947-4554 / Fax: (415) 947-4559
> Email: su.wendy@epa.gov

13.   IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.